50 CCPA

**Application of Carl Louis OTTO, Lanelle Burnham Otto and Joan Briton.**

**Patent Appeal No. 6901.**

United States Court of Customs and Patent Appeals.

Feb. 13, 1963.

Clarence M. Fisher, Pennie, Edmonds, Morton, Barrows & Taylor, Washington, D. C. (John T. Roberts, Washington, D. C., of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (Joseph F. Nakamura, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the Primary Examiner's rejection of claims 1–4 of appellants' application Ser. No. 512,520 filed June 1, 1955 for HAIR CURLERS FOR PERMANENT WAVING AND MANUFACTURE THEREOF.

Claims 1 and 4, illustrative of the appealed claims, read:

"1. As a new article of manufacture, a core member for hair curlers comprising a body of elastically

resilient foam material, the hair being wound directly on said body and said body carrying a hair waving lotion in non-liquid form distributed in the pores of the material.

"4. The method of making a core member of the character described for hair curlers which comprises providing a body of elastically resilient foam material, saturating the body with a hair waving lotion consisting of a water-soluble solution of saponified material and thereafter permitting the saturated body to dry, whereby to produce a body the pores of which are substantially impregnated with a waving solution in non-liquid form adapted to be activated by subsequent wetting of the body."

The references relied on by the examiner and the board are:

| "Picard | 1,219,147 | Mar. 13, 1917 |
|---|---|---|
| Banigan et al. | 2,295,823 | Sept. 15, 1942 |
| Ramsey | 2,418,664 | Apr. 8, 1947 |
| Moses | 2,720,206 | Oct. 11, 1955 |
| Connolly | 2,761,166 | Sept. 4, 1956 |
| Lyons | 2,763,885 | Sept. 25, 1956 |
| L'Oreal (France) | 966,988 | Mar. 15, 1950" |

Appellants' application relates to a core member for hair curlers. The body of the core member is made up of an elastically resilient foam material, e. g. a resinous polyurethane. It can be of any suitable shape, although the drawing shows it as cylindrical. A hair waving lotion, which may be a water-soluble mixture of thioglycolic acid and ammonia, in non-liquid form, is contained in the pores of the foam material. The lotion may be deposited by first saturating the core member with the lotion in solution form and thereafter permitting it to dry.

In use, the core member may have the tresses of hair wound on it while the core and hair are both dry. After the dry hair is wound on the dry core and fixed in place by appropriate retaining means, depending on the specific construction of the curler, the curler with the hair wound on it is then thoroughly wetted and manipulated by squeezing or twisting of the core member to force the lotion from the pores of the core member outwardly to saturate the hair wound on the curler.

The Moses patent discloses a hair curler provided with an absorbent pad member in the form of a cylinder of natural sponge, viscose sponge or the like for holding a permanent wave solution to be squeezed out into the hair wound on the curler.

Each of the Connolly and Lyons patents relates to a core member of absorbent material provided with a dry dentifrice which is activated for use by contact with a liquid. Picard discloses a similar member impregnated with a dentifrice or antiseptic while Banigan et al. relates to sponges impregnated with numerous materials.

The Ramsey patent and the French patent to L'Oreal each discloses a cream for use in the permanent waving of hair. The cream comprises a base which may include an emulsifiable water-soluble mixture of thioglycolic acid and ammonia.

The examiner indicated that in the light of the teachings of Lyons, Picard, Connolly and Banigan et al. he did not see "that invention would be involved in providing the pores of a core, as shown in Moses, with a non-liquid lotion, to be activated by liquid at the time of use." The examiner further rejected the claims as unpatentable over any of Picard, Lyons and Banigan et al. in view of either Ramsey or L'Oreal taking the

position that "it would not require invention to substitute the dry hair-waving compositions of either secondary reference for the dentifrice of each primary reference."

The board in affirming the rejection of the appealed claims stated:

" * * * We agree that the art used makes it obvious to incorporate in a sponge a material that has an unspecified degree of dryness (including the substantial degree of some of the art) that causes the material to be retained in the sponge and thus makes obvious doing this with hair waving material."

Appellants urge that the Moses core is not the article of manufacture which appellants claim. They contend that the Moses core is merely a wick inside of a perforated metal hair curler which when compressed will release liquid through the pores of the metal curler. Appellants also urge that the patents of Picard, Connolly and Lyons, which show a water-soluble dentifrice impregnated in a sponge body useful as a toothbrush and the Banigan et al. patent which mentions that artificial sponges may be impregnated with numerous materials "would not be reasonably expected to teach modifying the Moses curler." Appellants further contend that the cream lotion of Ramsey and L'Oreal will not work in their invention.

First of all it should be remembered that the claims are directed to a particular device and a method of making that device, not to a method of curling hair wherein this particular device is used. It seems appellants are endeavoring to predicate patentability upon a certain procedure for curling hair using this device and involving a number of steps in the process. This process is irrelevant as is the recitation involving the hair being wound around the core insofar as the determination of whether these particular claims should be allowed

or rejected. In re Lampert et al., 245 F.2d 253, 44 CCPA 958; In re Rishoi et al., 197 F.2d 342, 39 CCPA 1004; In re Mulholland, 129 F.2d 860, 29 CCPA 1222; In re Young, 75 F.2d 996, 22 CCPA 1060. It will be seen that the Lampert case pertains to the impropriety of relying on a method concept to distinguish a structural claim over the prior art and Rishoi and the others indicate that inclusion of the material or article worked upon by a structure being claimed does not impart patentability to the claims.

The particular device claimed is an elastically resilient "core member for hair curlers * * * carrying a hair waving lotion in non-liquid form distributed in the pores of the material." It should be noted at this point that no attaching means is recited in the claims.

Moses teaches a pad member which "is first charged with a curling liquid" to be inserted in a mandrel to be used for hair curling purposes. Picard, Banigan et al., Connolly and Lyons all teach impregnating sponge-like material with various substances for various purposes such as brushing teeth and polishing metalware. Connolly and Lyons teach impregnating a sponge-like material with *dry* substances to be activated by contact with a liquid. In view of these teachings we believe it would be within the skill of the art to apply those disclosures of Connolly and Lyons to Moses' pad. Since appellants' structure claims pertain only to a core or pad member and recite no means for attaching it to the hair, it is apparent that the invention does not distinguish over Moses' pad [1] in view of Connolly and Lyons insofar as the concept of impregnating the pores of a sponge-like pad with a dry substance, which pad is to be used in connection with hair curlers.

Appellants have never questioned that a hair curling composition, such as the water-soluble saponified thioglycolin-am-

---

1. There seems to be no contention on the part of appellants that patentability resides in the substitution of known foamed plastic in lieu of Moses' sponge material and we see none.

monia mentioned in their application, can be provided in dry form. Therefore no issue arises with reference to that matter. However it should be noted that even though the creams of L'Oreal and Ramsey may contain ingredients of appellants' hair curling preparation, being in cream form, it would not be practicable to endeavor to impregnate a hair curling pad with them.

Although the structure claims do not recite any means by which the core member could be attached to the hair and thus the *manner* of its intended use is of no significance, it might be well to note that the Moses pad impregnated with a dry hair curling substance would be operable with a non-liquid solution. Thus the core could be used by dipping the mandrel containing the pad into water which would activate the hair curling substance in the pad and then the mandrel could be attached to the hair and the liquid would be squeezed from the pad through the perforations in the mandrel into the hair by means of the plunger activity associated with the locking device. There is no significance in the fact that the Moses pad would be moistened differently than appellants' since, as stated, methods are not involved here. For these reasons we affirm the rejection of claims 1, 2 and 3.

Coming to claim 4, the only aspect of the recited method which requires additional consideration reads:

" * * *, saturating the body with a hair waving lotion * * * and thereafter permitting the saturated body to dry, * * * adapted to be activated by subsequent wetting of the body."

It does not appear to us that it would be beyond the skill of an ordinary workman in this art who desires to impregnate a foam-like material with a liquid soluble substance to prepare that substance in liquid form then saturate the material with it. Upon the material and the substance becoming dry, the substance obviously would remain in the pores of the material until it is reactivated by being wetted. We feel certain

that this procedure takes place every day in the homes in this country where a housewife saturates a sponge with soapy water then permits the sponge to dry and, unless she has rinsed the sponge thoroughly, when she wets the sponge again the water squeezed therefrom will be soapy. For these reasons we affirm the rejection of claim 4.

In view of the foregoing we *affirm* the decision of the board.

Affirmed.